**FANTASY BOOK SHOP, INC., et al., Plaintiffs,**

v.

**CITY OF BOSTON, et al., Defendants.**

**Civ. A. No. 80–2585–MC.**

United States District Court,
D. Massachusetts.

Feb. 16, 1982.

Regina L. Quinlan and Leonard A. Lucas, Boston, Mass., for plaintiffs.

Margaret M. Brown, Harry G. Stoddard, Boston, Mass., for Robert Ryan and Boston Redevelopment Authority.

Laurie Burt, Foley, Hoag & Eliot, Boston, Mass., for Chinese Economic Development Inc.

Arlene S. LaPenta, Boston, Mass., for City of Boston, Kevin White and Joanne Prevost.

Nicholas Foundas, Legal Advisor, Boston, Mass., for Boston Police Dept.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

This action came on to be heard on the motion to dismiss of the Chinese Economic Development Council, Inc., Michael O'Bryon, and William J. Leong (collectively, the CEDC, hereinafter).[1] At the hearing, a bench memorandum was read into the record and counsel agreed that it correctly set forth the arguments of both parties. That memorandum, in pertinent part, read as follows:

> Plaintiffs brought this action seeking declaratory and injunctive relief for alleged violations of rights guaranteed to them by the First and Fourteenth Amendments and protected by various civil rights statutes.

> The court denied a preliminary injunction on January 16, 1981. In *Fantasy Books v. City of Boston*, 652 F.2d 1115

---

1. At the hearing the parties stipulated to the dismissal of the defendant Joseph Jordan, the Police Commissioner of the City of Boston.

(1st Cir. 1981), the First Circuit found that the licensing ordinance was not *per se* unconstitutional, that the licensing scheme was procedurally adequate, that three of the licensing criteria (relating to noise, traffic, and disruptive conduct) were facially constitutional, that the fourth criteria ("legitimate protectible interests of . . . affected citizens") provided for "purely subjective evaluations of wholly unrestricted factors" and was unconstitutionally vague, and finally that the denials (based on probable increased disruptive conduct) must be based on, and accompanied by, specifically identifiable findings regarding the basis for defendant Prevost's conclusion that the licenses would lead to disruptive conduct and whether that conclusion rather than content-based considerations motivated the denials of plaintiffs' applications.

CEDC now moves for dismissal of Counts III, IV and V (the only counts mentioning CEDC) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

CEDC contends that Count III (violation of 42 U.S.C. § 1983) fails to state a cause of action since it lacks allegations of "state action" by CEDC. Its actions, says CEDC, were purely private in nature and did not involve state action. Under none of the three theories of private liability can its actions be considered state action, argues the CEDC, [those theories being: (1) where private entity performs a "public function", (2) where there is close and extensive involvement of state in acts of private entity, or (3) where there is a sufficient nexus between the state and acts of a private party].

CEDC argues that its purchase of the property in question does not amount to performance of a public function; that its receipt of public funds does not establish the "symbiotic relationship" necessary for finding "state action"; and that it is in no way regulated or controlled by the government.

CEDC's second argument for dismissal is that the claim of plaintiffs does not involve a federally protected constitutional right which CEDC has infringed. Expression of opposition to granting of licenses for peep shows, argues CEDC, does not constitute injury to plaintiffs' rights. CEDC characterizes plaintiffs' injuries as "commercial frustration" in being unable to locate their businesses where they would choose.

CEDC argues that there is no allegation of racial or other class-based invidiously discriminatory animus behind its actions. CEDC also argues the failure to allege material facts showing the existence of a conspiracy.

Plaintiffs argue that Count III sufficiently alleges that CEDC's actions constitute state actions in eliminating existing adult uses for the premises in question. They contend that after evaluating all of the facts, a symbiotic relationship between the CEDC and the state is shown. They argue that pronouncements of public officials in support of the CEDC redevelopment project and of eliminating the Combat Zone show a relationship sufficient to establish state action. Also, they argue that CEDC's participation in the conspiracy alleged in Count IV is sufficient to establish state action under § 1983.

The interest protected by the Constitution, say plaintiffs, is the right to conduct adult business. The licensing requirements, city ordinances, and redevelopment are being used to eliminate the adult uses in the Zone, they contend.

The plaintiffs argue that the *adult uses* are subject to the full array of First Amendment protections. The factual circumstances of the case, say plaintiffs, indicate that they are being discriminated against because of the adult uses for which they use the premises.

### Claims Under 42 U.S.C. § 1983

■ 42 U.S.C. § 1983 provides,

Every person who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects,

or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

The action which is prohibited by that section is "state action". *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1947). The determination of what actions meet the requirement of "state action" is difficult. The Supreme Court has declined to "fashion and apply a precise formula for recognition of state responsibility", *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961), and has warned that the determination of the existence of "state action" depends upon the facts and circumstances of each particular case. The Court, however, has indicated that "state action" may be established by showing the existence of a "symbiotic relationship", *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 175, 92 S.Ct. 1965, 1972, 32 L.Ed.2d 627 (1972), (discussing *Burton, supra* ), or a "sufficiently close nexus" between the state and the defendant so that the action of defendant may be treated as that of the state. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

Plaintiffs have attempted to show "state action" by pointing to a number of facts, the combination of which they say establishes that the acts of the CEDC may be construed as acts of the state. Those facts are:

1) that much of the funding for CEDC's renovation of the Boylston Building is to be provided by state and federal sources,

2) that the City and the Boston Redevelopment Authority (BRA) have publicly endorsed the project,

3) that CEDC and the BRA opposed the issuance of licenses to the plaintiffs for the exhibition of "peep shows".

4) that the defendant Prevost denied the plaintiffs' license applications, and

5) that on the same day on which Prevost issued letters of denial of license applications, a criminal complaint issued against the president of Fantasy Books charging the operation of his "peep show" business without a license.

None of these factors, however, singly or in combination, justify finding "state action" on the part of CEDC.

Clearly, CEDC is not performing a public function in renovating the Boylston Building, in opposing the granting of licenses to the plaintiffs, or in evicting tenants of that building. Those actions are not those which are "traditionally reserved exclusively to the state". *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). CEDC's receipt of state and federal funding for the redevelopment project does not transform its actions into the performance of a public function.

The allegations of the complaint are insufficient to state a claim under the "symbiotic relationship" standard of *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). The First Circuit has identified several factors which, if shown to be present, tend to indicate the "intertwined relationship" required under the *Burton* standard. *Rendell-Baker v. Kohn,* 641 F.2d 14, 23 (1st Cir. 1981). Those factors are: (1) the use of public property by the private party, (2) actual control by the state of the management of the private institution, (3) an expression by the state that a party is under its control, and (4) founding of the private institution to avoid the requirements of the Constitution. *Id.* None of those factors is alleged to exist in this case. Another factor, discussed in *Burton, supra,* and *Rendell-Baker, supra,* is the existence of a mutually-beneficial relationship between the public and private parties. Plaintiffs argue that the City of Boston will derive benefit from the renovation of the Boylston Building and from the eviction of the bookstores from that building. Such a benefit is speculative at best. Plaintiffs' eviction from the Boylston Building does not prevent them from relocating elsewhere in the Adult Entertain-

ment District of Boston. Whatever benefit may be derived by the City's relationship with the CEDC is not the type of benefit contemplated by the Court in *Burton, supra.*

Finally, plaintiffs' allegations are insufficient to establish "state action" under the "nexus" standard of *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). As previously noted, the CEDC does not perform a public function; nor is it subject to extensive regulation by a public entity. The actions of the CEDC (opposing the granting of licenses to the plaintiffs and evicting the plaintiffs) and the actions of the public defendants (refusing to grant licenses and supporting the redevelopment of the Boylston Building) show close cooperation between the public and private defendants but do not establish the "nexus" required to show "state action" on the part of CEDC.

■ Even if plaintiffs were able to establish that CEDC's actions amounted to "state action", the allegations of Count III would not establish that those actions violated a constitutional right. The plaintiffs have the right to sell books and magazines and to exhibit "peep shows"; that right is guaranteed by the First and Fourteenth Amendments. The plaintiffs have not alleged that they will not be able to pursue that business because of the actions of the defendants here. Those actions merely prohibit the plaintiffs from conducting their businesses *in the Boylston Building.* That surely does not amount to a violation of a constitutional right.

For the foregoing reasons, plaintiffs' claim against the CEDC under 42 U.S.C. § 1983 must be dismissed.

*Claim Under 42 U.S.C. § 1985(3)*

■ 42 U.S.C. § 1985(3) prohibits conspiracies to deprive any person of the equal protection of the laws or of equal privileges and immunities under those laws. In order to sufficiently plead a claim for a violation of that section, the complaint must show that the conspirators exhibited a "class-based invidiously discriminatory animus". *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The First Circuit has interpreted the holding in that case to require that plaintiffs be members of a class readily recognizable or traditionally protected by the Civil Rights Act, that the defendants conspired to deny plaintiffs equal protection because of their membership in the class, and that the criteria defining that class were invidious. *DesVergenes v. Seekonk Water District*, 448 F.Supp. 1256, 1261 (D.Mass.1978); *Harrison v. Brooks*, 519 F.2d 1358, 1359–60 (1st Cir. 1975); *Bricker v. Crane*, 468 F.2d 1228, 1232–1233 (1st Cir. 1972).

■ Plaintiffs have not established that they are members of a class protected by the Civil Rights Act. It appears from their brief that plaintiffs assert that the adult uses for which the premises are used are the actual plaintiffs in this case. Since those uses are protected by the First Amendment, say plaintiffs, they constitute a class protected by the Civil Rights Act. Uses cannot constitute a class; persons must. The Civil Rights Act was designed to provide remedies to *persons* or classes of *persons* for violations of their civil rights. Assuming, without so deciding, that the plaintiffs do constitute a class protected by § 1985, plaintiffs have failed to establish that the defendants conspired to deny *them* equal protection because of *their* membership in that class; nor have they alleged that they were treated differently than other tenants of the Boylston Building.

Since claims under 42 U.S.C. § 1986 must fall where the claims under § 1985 are rejected, *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir. 1075), the § 1986 claim against the CEDC must be dismissed.

For the foregoing reasons, the claims against CEDC, Michael O'Bryon, and William J. Leong under Counts III, IV, and V are hereby dismissed.