Juan GOMEZ, Appellant,

v.

NORTH DAKOTA RURAL DEVELOPMENT CORPORATION, Jose Luis Balderas and Cesario Duran, Appellees.

No. 82–2450.

United States Court of Appeals, Eighth Circuit.

Submitted April 22, 1983.

Decided April 27, 1983.

Randolph E. Stefanson, Stefanson, Landberg & Alm, Moorhead, Mn., for appellant.

David Kessler, Grand Forks, N.D., for appellees.

Before HEANEY, BRIGHT and FAGG, Circuit Judges.

PER CURIAM.

Juan Gomez filed suit in federal district court alleging the North Dakota Rural Development Corporation, formerly the North Dakota Migrant Council, discharged him in violation of his fifth amendment right to due process. The district court granted summary judgment holding that Gomez had not shown federal government action. We affirm the judgment of the district court.

The NDRDC is a non-profit corporation organized under North Dakota law and incorporated to assist farm workers and other low-income persons achieve self-improvement in such areas as business and economic development, health, education, housing, training, energy and communications. A board of directors, comprised of migrant farm workers who are elected as representatives from areas within North Dakota, is the controlling authority of the NDRDC. The Board controls the NDRDC's programs and supervises the executive director who oversees daily operations. The Board determines personnel policy, subject to the review of the Department of Labor, and has the power to hire and discharge personnel.

During the period in question, the NDRDC received substantially all of its operating funds from the federal government through grants by the Comprehensive Employment and Training Act (CETA), the United States Community Services Administration, and the Farmers Home Administration. To receive federal funding, the NDRDC had to comply with federal regulations covering employment policies and procedures, lobbying limitations, accounting and inspection procedures, expenditure limitations, and review of programs and procedures. *See, e.g.,* 20 C.F.R. § 689 (1982). The NDRDC Board submitted the minutes of its meetings and quarterly reports concerning its goals, services rendered, and budgetary status to the Department of Labor. A government authorized representative from the Department of Labor monitored the NDRDC's compliance with government regulations.

The executive director hired Gomez in 1976. Gomez served as area director, director of field operations, and was deputy director when the Board discharged him. Prior to his discharge, the Board suspended him with pay pending a board meeting. A letter of suspension provided him with the reasons for the suspension. On June 12, 1979, the Board met and voted to discharge Gomez. Gomez was not present at this meeting and he alleges that he has not received a requested post-termination hearing. On April 22, 1981, Gomez filed suit in federal district court alleging the NDRDC and its officers denied him due process.

NDRDC, arguing Gomez's discharge was not an action attributable to the federal government, moved for dismissal or, alternatively, for summary judgment. The district court held a hearing and received evidence on the federal action question. Subsequently, the district court held Gomez failed to show a sufficient nexus between the federal government and his discharge. "Absent such a nexus, no 'federal government action' exists and plaintiff has no cognizable fifth amendment claim." *Gomez v. NDRDC,* No. A3–81–61 at 4 (October 29, 1982) (unpublished memorandum opinion).

■ "The standard for finding federal government action under the fifth amendment is the same as that for finding state action under the fourteenth amendment." *Warren v. Government National Mortgage Association,* 611 F.2d 1229, 1232 (8th Cir.), *cert. denied,* 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980) (citations omitted). Both amendments apply to governmental rather than private action. *See, e.g., Public Utilities Comm'n v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952); *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1947). The ultimate issue in this case is therefore whether the alleged infringement of Gomez's rights is fairly attributable to the federal government. *See, e.g., Lugar v. Edmonson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982).

In two recent cases the Supreme Court thoroughly discussed the government action requirement in cases involving government-regulated, publicly-funded private entities which perform public services. In *Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Court considered whether a private school whose income was derived primarily from public services and which was regulated by public authorities, acted under color of state law when it discharged certain employees. In *Blum v. Yaretsky,* —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), Medicaid patients challenged a private nursing home's decisions to discharge or transfer patients without notice or an opportunity for a hear-

ing. The Supreme Court did not find state action in either case. In reaching its conclusions, the Court considered the same factors Gomez argues in this case.

■ First, public funding does not make a program's administrative decisions acts of the state. *Blum v. Yaretsky, supra,* 102 S.Ct. at 2789, *Rendell-Baker v. Kohn, supra,* 102 S.Ct. at 2771. Although the state supplied virtually all the funding for both the school in *Rendell-Baker* and the nursing homes in *Blum,* it was not responsible for decisions concerning employee discharges or patient transfers. The Court likened these entities to private contractors who perform government construction contracts. Even if these private contractors only perform public contracts, their acts are not those of the government. *Rendell-Baker v. Kohn, supra,* 102 S.Ct. at 2771. *See also United States v. Orleans,* 425 U.S. 807, 815–16, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976) (community action program was private contractor not federal enterprise within purview of FTCA). Therefore, federal funding of the NDRDC does not make the discharge decision of the Board a government act subject to the fifth amendment.

■ Second, extensive government regulation does not compel a finding of federal action. "The complaining party must also show that 'there is a sufficiently close nexus between the [government] and the challenged action of the entity so that the action of the latter may be fairly treated as that of the [government] itself.'" *Blum v. Yaretsky, supra,* 102 S.Ct. at 2786, *quoting Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Warren v. Government National Mortgage Association, supra,* 611 F.2d at 1232. Although both state and federal regulations encouraged nursing homes to transfer patients to less expensive facilities when appropriate, the Court did not attribute the actual decision to transfer to the state. *Blum v. Yaretsky, supra,* 102 S.Ct. at 2786–87. Likewise, the decision to discharge private school personnel was not state action even though the Justice Department had the power to approve persons

hired for the plaintiff's position. *Rendell-Baker v. Kohn, supra,* 102 S.Ct. at 2772.

Gomez points specifically to special conditions imposed on the grant which required the NDRDC's personnel manual and all new job descriptions, prescribed procedures for filling these positions, and required personnel action on each applicant be made available for review. These conditions also require certain positions be filled subject to Department of Labor approval. However, Gomez has not cited any government regulation that could have compelled his discharge. The Department of Labor merely conditions its grant on the power to review and approve some personnel actions of the NDRDC. These conditions apply to general personnel policies and procedures for hiring, promotion, and salary. No conditions mandate or encourage discharge decisions by the Board. Thus, a sufficient nexus does not exist between government regulations affecting the NDRDC and the Board's decision to discharge Gomez.

Third, government action does not exist merely because the NDRDC performs a public function. "That a private entity performs a function that serves the public does not make its act the acts of the state." *Rendell-Baker v. Kohn, supra,* 102 S.Ct. at 2772. "The question is whether the function performed has been 'traditionally the *exclusive* prerogative of the state.'" *Id.* (citations omitted). The Supreme Court does not consider care for the elderly or the education of maladjusted students the exclusive prerogative of the state. Thus, while the NDRDC performs a public service by upgrading the economic and social status of migrant workers, this fact does not convert the discharge decision of the NDRDC Board into an act of the federal government.

Finally, the Supreme Court precedents preclude finding a symbiotic relationship between the NDRDC and the federal government. A symbiotic relationship exists when the government profits from the allegedly unconstitutional conduct. *Rendell-Baker v. Kohn, supra,* 102 S.Ct. at 2772. A community action agency's fiscal relationship with the state is not different from that of many contractors performing services for the government. *Id.* "[A]part from its interest in seeing that a federal grant is actually used for its intended purpose, the government has no vested interest in the success or even the continued existence of any particular community agency." *Griffith v. Bell-Whitley Community Action Agency,* 614 F.2d 1102, 1109 (6th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980). Since the NDRDC is essentially a private contractor with the federal government, no symbiotic relationship exists in this case.

We find no federal action in appellant's discharge. Accordingly, the judgment of the district court is affirmed.