Cynthia J. Phillips vs. Youth Development Program, Inc.

Hampden. April 7, 1983. — December 28, 1983.

Present: Hennessey, C.J., Wilkins, Abrams, Nolan, & O'Connor, JJ.

*Civil Rights. Practice, Civil,* Civil rights. *Constitutional Law,* State action. *Juvenile Court,* Probation. *Contract,* Employment. *Due Process of Law,* Employment.

A private nonprofit corporation which provided, under a contract with the Commonwealth, various innovative social services in aid of an "intensive juvenile probation program" maintained by a Juvenile Court was not performing a function traditionally reserved exclusively to the Commonwealth, so as to cause the action of the corporation in dismissing a social worker employed by it to be attributable to the Commonwealth for purposes of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (1970). [654-655] Abrams, J., dissenting.

Where the action of the board of directors of a private nonprofit corporation in dismissing a social worker employed by it was not required or substantially influenced by any policy or regulation of the Commonwealth or by provisions of a contract between it and the Commonwealth under which the corporation rendered various innovative social services in aid of an "intensive juvenile probation program" maintained by a Juvenile Court, the dismissal was not attributable to the Commonwealth for purposes of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (1970). [655-657] Abrams, J., dissenting.

The evidence in an action by a social worker against her former employer would not warrant a conclusion that she was discharged in violation of the obligation of good faith and fair dealing inherent in her employment arrangement. [657]

This court declined to consider a plaintiff's contention that a broader definition of State action should be applied under art. 12 of the Massachusetts Declaration of Rights than that applied under the Fourteenth Amendment to the Federal Constitution, where she had not raised this issue at trial, in the Appeals Court, or in her application to this court for further appellate review. [657-660]

CIVIL ACTION commenced in the Superior Court Department on October 12, 1979.

The case was heard by *Keady*, J., a District Court judge sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Anne Rideout* for the defendant.

*Gerald R. Hegarty* for the plaintiff.

WILKINS, J.   In October, 1979, the defendant Youth Development Program, Inc. (YDP), discharged the plaintiff as its supervisor of supportive services in circumstances that would entitle her to relief under 42 U.S.C. § 1983 (1970), if YDP's action in discharging her was "State action" for the purposes of § 1983 and the Fourteenth Amendment to the United States Constitution.   The trial judge concluded that YDP engaged in State action in firing the plaintiff.   He ordered her to be reinstated with a full restoration of rights, including back pay, and awarded her attorney's fees and $4,000 in compensatory damages.   On appeal, by a divided (two to one) vote, the Appeals Court reversed the judgment for the plaintiff and ordered dismissal of the action. *Phillips* v. *Youth Dev. Program, Inc.*, 14 Mass. App. Ct. 626 (1982).

The opinions in the Appeals Court — there were three — considered principles the Supreme Court of the United States had recently stated in three opinions issued on the same day. See *Blum* v. *Yaretsky*, 457 U.S. 991 (1982); *Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922 (1982); *Rendell-Baker* v. *Kohn*, 457 U.S. 830 (1982).   The three Supreme Court opinions, each authored by a different Justice, state tests for the determination of State action that may not be entirely consistent. Nevertheless, based on the reasoning of the Supreme Court collectively expressed in these opinions, we conclude, in agreement with the Appeals Court, that the act of discharging the plaintiff is not State action for the purpose of § 1983 or of the Fourteenth Amendment.   We reject the plaintiff's claim for relief on common law contract grounds and decline to pass on her claim for relief under the Constitution of the Commonwealth because the claim is raised too late.

In claiming that her discharge by YDP was State action, the plaintiff relies on the relationship of YDP with the Springfield Juvenile Court. There is no doubt that YDP, a private corporation, had a close association with that court. In fact the Juvenile Court was YDP's sole client. Three of YDP's nine directors were employees of that court. YDP's by-laws provided that the "Intensive Juvenile Probation Program" was subject "in all phases" to the final approval of the presiding judge of the Juvenile Court. Probation officers of the Juvenile Court referred juveniles to YDP and recommended the services they wished YDP to provide. YDP's program was not, however, required by statute, and, as far as appears in the record, no statute or regulation required the Commonwealth to provide services of the type furnished by YDP to the juveniles. Prior to July 1, 1979, YDP was funded solely by Hampden county pursuant to contracts between the county commissioners and YDP. For the fiscal year commencing July 1, 1979, the Commonwealth provided funding pursuant to a contract between the administrative office of the Trial Court and YDP.[1] All salaries of YDP employees were paid from the office of the State Treasurer. Nothing in the contract, however, gave any representative of the Commonwealth the right to hire or fire YDP personnel. There was no evidence that the Juvenile Court judge, or any employee of the State acting as such participated in the decision to discharge the plaintiff.

1. If a nominally private entity is performing a function that is "traditionally the exclusive prerogative of the State," then all the acts of that entity are State action. *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974). See *Blum* v. *Yaretsky, supra* at 1011; *Rendell-Baker* v. *Kohn, supra* at 842. The evidence would not support a conclusion that YDP was performing a traditional, exclusive function of the Commonwealth. The Supreme Court has taken a

---

[1] The contract effective July 1, 1979, was not executed until October 11, 1979. At the time of the decision to discharge the plaintiff there was no agreement in effect. YDP makes no particular point of this fact.

narrow view of what functions are traditionally reserved exclusively to the State.[2]  YDP did not displace the role of the Juvenile Court probation department.  Rather, it engaged in innovative counseling, recreational and educational programs not normally associated with traditional probation.

The decision to discharge the plaintiff could have been State action, even if YDP was not carrying out a traditionally exclusive prerogative of the State, if the discharge was required or substantially influenced by State policy or regulation or by YDP's contract with the State.  The Appeals Court was correct in noting that the fact that YDP received referrals only from the court and received 100% of its financing from the State did not make the discharge State action.  14 Mass. App. Ct. at 637.  Nor did the Juvenile Court's regulation of YDP warrant a conclusion that State action was involved in the discharge.  *Id.* at 637-638.

The focus of an inquiry into State action must be on the Commonwealth's involvement in YDP's decision to discharge the plaintiff, and not on the over-all relationship of YDP and the Juvenile Court.  There was no evidence that the Juvenile Court judge passed on this or any other individual discharge decision.  The plaintiff argues that a provision in the by-laws of YDP, set forth in the Appeals Court opinion, *id.* at 638, required the Juvenile Court judge's approval of all termination decisions.  Even if we were to accept that construction of the by-law provision, the plaintiff has failed to show that the judge's possible involvement rose above the level of "[m]ere approval of or acquiescence in the initiatives of a private party . . . ." *Blum* v. *Yaretsky, supra* at 1004.

The decision to discharge the plaintiff was "not compelled or even influenced by any state regulation." *Rendell-Baker*

---

[2] Activities said to have this status are running a company town (*Marsh* v. *Alabama,* 326 U.S. 501 [1946]); elections (*Terry* v. *Adams,* 345 U.S. 461 [1953]); and perhaps the exercise of eminent domain (*Jackson* v. *Metropolitan Edison Co.,* 419 U.S. 345, 352-353 [1974]).  Activities excluded from this category include nursing care (*Blum* v. *Yaretsky, supra*); education (*Rendell-Baker* v. *Kohn, supra*); resolution of private disputes (*Flagg Bros.* v. *Brooks,* 436 U.S. 149, 161 [1978]); and providing utility service (*Jackson* v. *Metropolitan Edison Co., supra* at 358-359).

v. *Kohn, supra* at 841. Similarly, the Appeals Court properly concluded that there was no mutually beneficial or "symbiotic" relationship between YDP and the Commonwealth warranting the conclusion that the Commonwealth was a joint participant or profited in any way from the challenged activity. 14 Mass. App. Ct. at 639.

The view taken by the Appeals Court, which we endorse, is consistent with the reasoning of recent opinions of various Federal Circuit Courts of Appeals. Unless the private entity is performing a traditional and exclusive State function, the focus must be on whether government action was involved in the particular conduct that is challenged as wrongful. See *Gilmore* v. *Salt Lake Community Action Program,* 710 F.2d 632, 638-639 (10th Cir. 1983) (no State action in the discharge of plaintiff from a federally funded community action program, some of whose trustees were public officials); *Gomez* v. *North Dakota Rural Dev. Corp.,* 704 F.2d 1056, 1058-1059 (8th Cir. 1983) (no Federal government action and hence no Fifth Amendment violation in the discharge of the plaintiff by a nonprofit corporation that had a contract with the United States Department of Labor requiring departmental approval of hiring policies); *McVarish* v. *Mid-Nebraska Community Mental Health Center,* 696 F.2d 69, 71 (8th Cir. 1982) (State action involved where plaintiff was discharged by vote of governing board, a majority of whose members were appointed by governmental units for the purpose of permitting them to supervise and allocate resources efficiently); *Milonas* v. *Williams,* 691 F.2d 931, 939 (10th Cir.), cert. denied, 460 U.S. 1069 (1982) (private residential school in which some youths were involuntarily placed by Juvenile Court authorities for rehabilitation engages in State action in its treatment of students). Only when government action is involved can it "be said that the State is *responsible* for the specific conduct of which the plaintiff complains" (emphasis in original). *Blum* v. *Yaretsky, supra* at 1004. Implicit in the requirement that consideration be given to the extent of the State's involvement in the particular act alleged to be wrongful is the possibility

that an entity may be engaged in State action for one purpose and not for another. See *Milonas* v. *Williams*, *supra* at 940; *Rendell-Baker* v. *Kohn*, 641 F.2d 14, 26 (1st Cir. 1981), aff'd, 457 U.S. 830 (1982). We thus agree with the Appeals Court that the evidence would not warrant a conclusion that the defendant's discharge was State action entitling her to relief under 42 U.S.C. § 1983 (1970).

2. We also agree with the Appeals Court that the evidence would not warrant a decision in favor of the plaintiff on her claim that she was discharged in violation of the imposed obligation of good faith and fair dealing inherent in her employment arrangement. See 14 Mass. App. Ct. at 639. There is no evidence that she lost reasonably ascertainable future compensation based on past services, that YDP received any financial benefit from her discharge, or that her discharge without cause was for a reason that, as a matter of public policy should be rejected as adequate ground for her discharge. See *Gram* v. *Libery Mut. Ins. Co.*, 384 Mass. 659, 667-669, 672 (1981); *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104-106 (1977).

3. In this court for the first time, in a supplemental brief filed after this court granted further appellate review, the plaintiff argues that we should adopt a broader definition of State action to be applied under the Constitution of the Commonwealth. The record and briefs demonstrate that the plaintiff did not argue to the trial judge, to the Appeals Court, or to this court in her application for further appellate review that State action for State constitutional purposes may be different from State action for Federal constitutional purposes.

General Laws c. 12, §§ 11H, 11I, inserted by St. 1979, c. 801, § 1 (the State analogues to 42 U.S.C. §§ 1983, 1988 [1970]), were not in effect when the plaintiff was discharged.[3] We would grant, however, that a person whose constitutional rights have been interfered with may be entitled

---

[3] It should be noted that, because of language differences, the scope of § 1983 and the scope of §§ 11H and 11I are not identical.

to judicial relief even in the absence of a statute providing a procedural vehicle for obtaining relief.[4]

Although we have held that at least one constitutional right (ballot access) will be protected even in the absence of State action (see *Batchelder* v. *Allied Stores Int'l, Inc.,* 388 Mass. 83, 89-90 [1983]), the concept of due process of law ("the law of the land" — art. 12 of the Massachusetts Declaration of Rights) inherently is concerned with governmental action.[5] There is little doubt that this court may

---

[4] It seems uncontroverted that 42 U.S.C. § 1983 (1970) does not provide a statutory vehicle for the enforcement of State constitutional rights. See *Parratt* v. *Taylor,* 451 U.S. 527, 535 (1981); *Paul* v. *Davis,* 424 U.S. 693, 700-701 (1976). There was, therefore, no statutory vehicle available, at the time of her discharge, pursuant to which the plaintiff could seek redress for the alleged violation of her State constitutional rights.

The absence of a statutory remedy for the violation of constitutional rights cannot absolutely and in all cases bar judicial protection of those rights. The Supreme Court of the United States has recognized this principle and, in the absence of special factors or an explicit alternative statutory remedy, has allowed direct actions to protect rights under the Federal Constitution. See *Carlson* v. *Green,* 446 U.S. 14, 18-19 (1980); *Davis* v. *Passman,* 442 U.S. 228, 242-243 (1979); *Bivens* v. *Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 396-397 (1971).

The Supreme Court of New Jersey has recognized that, although it is desirable, there is no need for "legislative implementation to afford an appropriate remedy to redress a violation of [explicit State constitutional] rights." *Cooper* v. *Nutley Sun Printing Co.,* 36 N.J. 189, 197 (1961). See *Peper* v. *Princeton Univ. Bd. of Trustees,* 77 N.J. 55, 76-77 (1978). The Supreme Court of California reached the same conclusion where the plaintiffs had no administrative (or other) remedy available. *Gay Law Students Ass'n* v. *Pacific Tel. & Tel. Co.,* 24 Cal. 3d 458, 475 & n.10 (1979). On the other hand, the Supreme Court of Hawaii would not allow a direct right of action for money damages against the State itself based on a claimed violation of the State Constitution. *Figueroa* v. *State,* 61 Hawaii 369, 381-382 (1979). The Supreme Court of Alaska, citing "special factors counselling hesitation" (*Bivens* v. *Six Unknown Named Agents of the Fed. Bureau of Narcotics, supra* at 396), denied a direct action against the State housing authority. *King* v. *Alaska State Hous. Auth.,* 633 P.2d 256, 260-261 (Alaska 1981).

[5] The Court of Appeals of New York has recognized that the due process clause of the New York Constitution dealt with State action but that "the absence of any express State action language [in the State Constitution] simply provides a basis to apply a more flexible State involvement requirement than is currently being imposed by the Supreme Court with respect

fashion its own concepts of due process of law under the Constitution of the Commonwealth and apply them within the permissible limits of the Constitution of the United States. See *Moe* v. *Secretary of Admin. & Fin.*, 382 Mass. 629, 649 (1981). Thus, in determining what is State action for State due process of law purposes, we need not define State action as the Supreme Court of the United States has defined State action for Fourteenth Amendment and § 1983 purposes.[6]

---

to the Federal provision." *Sharrock* v. *Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152, 160 (1978). The court (by a four to three vote) proceeded to decide that under the New York Constitution the case involved the equivalent of State action ("sufficient and meaningful State participation," *id.* at 161), where it was questionable, but not necessary to decide, whether State action was involved for the purposes of the due process clause of the Fourteenth Amendment. *Id.* at 159. The Supreme Court of California, in considering due process provisions of its Constitution, has acknowledged that State action is inherent in those provisions, that it was not bound by Federal definitions of State action, but, in the context of the particular case, it would not depart from the Federal definitions. *Garfinkle* v. *Superior Court*, 21 Cal. 3d 268, 281-282 (1978).

Other State courts have concluded, unanimously as far as we can discern, that the due process provisions of their State Constitutions have an implicit requirement of State action or involvement. See *USA I Lehndorff Vermoegensverwaltung* v. *Cousins Club, Inc.*, 64 Ill. 2d 11, 20-21 (1976); *Campbell* v. *St. Mary's Hosp.*, 312 Minn. 379, 384 (1977); *Federal Nat'l Mortgage Ass'n* v. *Howlett*, 521 S.W.2d 428, 439 (Mo. 1975); *Duffley* v. *New Hampshire Interscholastic Athletic Ass'n*, 122 N.H. 484, 490-491 (1982); *North Carolina Nat'l Bank* v. *Burnette*, 297 N.C. 524, 534-535 (1979); *Kennebec, Inc.* v. *Bank of the West*, 88 Wash. 2d 718, 726 (1977). As to the general view that State action must be involved under equal protection of the laws clauses of State Constitutions, see *Schreiner* v. *McKenzie Tank Lines & Risk Management Servs., Inc.*, 408 So. 2d 711, 715-716 (Fla. Dist. Ct. App. 1982), and cases cited, aff'd, 432 So. 2d 567 (Fla. 1983).

[6] The plaintiff also relies on the free speech provisions of art. 16 of the Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution, which provides in part, "The right of free speech shall not be abridged." The plaintiff does not argue, even in her supplemental brief, that art. 16 (free speech) should be interpreted to provide protection against the acts of private parties, a point we left open in *Batchelder* v. *Allied Stores Int'l, Inc., supra* at 91-92. She argues only that this court should adopt less stringent standards in defining State action under the Constitution of the Commonwealth.

This said, however, we decline the belated invitation to define State action in this case for due process purposes under the State Constitution. This important constitutional question should not be resolved on an argument raised as an afterthought and not fully briefed on both sides. Although it is within our power to do so, we would not, barring exceptional circumstances, expect to address an issue not already raised in a case at the time we grant further appellate review. See *Albert* v. *Municipal Court of the City of Boston*, 388 Mass. 491, 494 (1983).

4. The judgment of the Superior Court is reversed and a new judgment shall be entered dismissing the action.

*So ordered.*


ABRAMS, J. (dissenting). There is ample record support for the judge's conclusion that the plaintiff's discharge was made in circumstances that entitle her to relief under 42 U.S.C. § 1983 (1970). "[T]he defendant's performance of a public function and the substantial involvement of the State, through the Springfield Juvenile Court, in its affairs establish 'a sufficiently close nexus between the State and the [defendant's] challenged action . . . so that the action of the latter may be fairly treated as that of the State itself.'" *Phillips* v. *Youth Dev. Program, Inc.*, 14 Mass. App. Ct. 626, 643 (1982) (Greaney, J., dissenting), quoting *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974).

The plaintiff was hired in 1971 by the Juvenile Court as a social worker and assigned to the intensive juvenile probation program. In 1972, in order to increase its financial flexibility, this program was incorporated as YDP. YDP's incorporation was expressly approved by the Juvenile Court judge and the chief probation officer. After incorporation, the plaintiff was transferred from the court's staff to YDP's staff and sworn as a deputy probation officer of the Juvenile Court. See G. L. c. 276, § 89A. The plaintiff, as a YDP employee, continued to perform the same tasks she had performed when employed by the court.

The plaintiff's duties at the court and at YDP required investigations of probationers and the monitoring of their progress in school, duties imposed by statute on juvenile probation officers. See G. L. c. 119, § 57.[1] In performing her job, the plaintiff had access to court records and school records. Such records are not available to the public (which, of course, includes private contractors). See G. L. c. 119, § 60A.[2]

The court's view that YDP "engaged in innovative counseling, recreational and educational programs not normally associated with traditional probation,"[3] *supra* at 655, is contradicted by the facts. The plaintiff's functions as a YDP employee were performed by her as an employee of the Springfield Juvenile Court probation department in 1971. The judge found that the plaintiff's services if "not identical to, complement the service[s] of the Juvenile Court Probation Department" as required by the statutes of this Commonwealth. See G. L. c. 119, §§ 57-59, 62, 67, and 68. See also G. L. c. 119, § 60A.

---

[1] General Laws c. 119, § 57, as amended by St. 1973, c. 1073, § 12, requires that "[e]very case of a delinquent child shall be investigated by the probation officer, who shall make a report regarding the character of such child, his school record, home surroundings and the previous complaints against him, if any."

[2] "The records of the court, including those of a juvenile appeals session, in all cases of delinquency arising under sections fifty-two to fifty-nine, inclusive, shall be withheld from public inspection except with the consent of a justice of such court . . . ." G. L. c. 119, § 60A, as appearing in St. 1978, c. 478, § 59. See *Globe Newspaper Co.* v. *Superior Court,* 379 Mass. 846, 858 n.10, vacated and remanded on other grounds, 449 U.S. 894 (1980), *S.C.* 383 Mass. 838 (1981), rev'd, 457 U.S. 596 (1982) (The purpose of the statute is "to protect the identity of minors . . . to prevent stigmatization of minors and to encourage rehabilitation," an objective hard to realize if the records are made available to private contractors). See also 603 Code Mass. Regs. 23.07 (4)(b) and (2)(d) (1978) (school records [obtained by plaintiff] are not available to the public).

[3] In *Metcalf* v. *Commonwealth,* 338 Mass. 648, 651 (1959), we recognized that the provisions governing delinquent children required "basic changes in the traditional method of dealing with criminal offenders [which] have been made in the case of juveniles." Thus, I see no merit to the court's conclusion that the plaintiff's services were not "traditional probation."

The Commonwealth paid for YDP, allowed YDP access to confidential records, relied on YDP reports in the sentencing of juveniles, and swore in YDP staff as deputy probation officers so that children "in the care of probation officers . . . may receive to a greater degree individual attention and guidance." G. L. c. 276, § 89A, as appearing in St. 1978, c. 478, § 292. The functions of YDP were the same as those required of probation officers under G. L. c. 119, § 57. In sum, the plaintiff performed functions that were traditional and exclusive functions of State government. The plaintiff's firing, therefore, constituted State action. See *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345, 352-353 (1974).

The facts also support the conclusion that YDP was an integral part of the Springfield Juvenile Court, clearly a State agency. YDP had as one of its incorporators the judge of the Juvenile Court, as well as two other persons with supervisory positions with that court. At the time the plaintiff was fired, five of the nine directors were State officials or were public employees.[4] I think it highly unlikely that a private contractor would have permitted a majority of its board of directors to be public officials or public employees.

The function of the Intensive Juvenile Probation Program of YDP was, as the name implied, to provide probationers with intensive probation. The program to which the plaintiff was assigned was subject "in all phases, to the final approval of the presiding justice of the Springfield Juvenile Court . . . which [included] policy, programming, and personnel." The judge of the Juvenile Court was YDP's first president, and he remained on its board until June, 1979. The functions of YDP could not be performed were it not for the power of the Juvenile Court to investigate youthful offenders, amass probation records, authorize use of these records by other public agencies, and offer youthful offen-

---

[4] The chief probation officer of the Juvenile Court, the assistant chief probation officer, the assistant clerk magistrate of the Juvenile Court, the principal planner of the criminal justice office for the city of Springfield, and an employee of the Department of Youth Services. Three of the five were court employees.

ders a chance to participate in these programs, rather than be committed to the Department of Youth Services.

The plaintiff was paid by checks issued by the State Treasurer's office. Although the plaintiff was listed as a "nonemployee," her W-2 statements identified the Commonwealth as her "employer" and no FICA deductions were taken from her checks. The plaintiff was given an official State title, Commonwealth letterhead and business cards, and the authority to report to the court on a child's behavior. The evidence supports a conclusion that there was "a close, working partnership between the Juvenile Court and the defendant in which the latter's freedom of decision making was circumscribed by State officers of the Juvenile Court who possessed, and exercised, the power to approve its staffing, policies, and operating methodology." *Phillips* v. *Youth Dev. Program, Inc.*, 14 Mass. App. Ct. 626, 646 (1982) (Greaney, J., dissenting). The facts establish a sufficiently close nexus between the State and the discharge of the plaintiff so that acts of YDP may be considered those of the State. See *Rendell-Baker* v. *Kohn*, 457 U.S. 830, 838-839 n.6 (1982); *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974).

This case is clearly distinguishable from *Rendell-Baker*, *supra*, and *Blum* v. *Yaretsky*, 457 U.S. 991 (1982), on which the court relies. In *Rendell-Baker*, the claim of State action was limited to funding and regulation. In the instant case, in addition to funding and regulation, the plaintiff was cloaked with the authority of an official of the Juvenile Court probation department and had the same responsibilities as a State court probation officer. She had access to nonpublic information. Further, the plaintiff performed the same services for YDP as she did for the court. In contrast, the school in *Rendell-Baker* was founded as a private institution, and no member of the board was chosen by a public official or was a public official. Nor was there any evidence that the employees were sworn as public officials or that they exercised State authority. See *Rendell-Baker*, *supra* at 832. In *Blum* v. *Yaretsky, supra* at 1005, the con-

tested actions were done by private nursing homes and private physicians, who received funding from the State, and who were regulated by the State. In *Blum, Rendell-Baker,* and the other examples of nonexclusive activities cited by the court, *supra* at 655 n.2, the services could be provided by private contractors to the public or to private persons. In the instant case, probation services are provided by courts in lieu of other sentences for those convicted or found delinquent by the criminal or juvenile justice systems. Court probation services are not services provided by private contractors. Rather, they are exclusive State public services used by courts.

The State dominated YDP. The nexus between YDP and the Juvenile Court was substantial. YDP was accountable exclusively to the Juvenile Court, its employees had official State titles and had no private function. The plaintiff lost her State position as a deputy probation officer as a result of her discharge. Thus, it is irrelevant that the three court officials did not participate in the actual firing. What this court apparently now thinks is that *Rendell-Baker* requires the discharge be accomplished by a State official. The court's interpretation of *Rendell-Baker* is far narrower than the Supreme Court's view that the conduct merely be "fairly attributable to the State." *Rendell-Baker* v. *Kohn, supra* at 838, quoting *Lugar* v. *Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Neither *Rendell-Baker* nor *Blum* changed the prior law. In *Rendell-Baker,* the Supreme Court "considered each of the factors alleged by the petitioners . . . [to determine whether] the discharge decisions . . . [were] fairly attributable to the State." *Rendell-Baker* v. *Kohn, supra* at 840 (e.g., funding, *id.* at 840; regulation, *id.* at 841; public function, *id.* at 842; and "symbiotic relationship," *id.* at 842-843). The flaw in the court's opinion is that it fails to consider the various factors and isolates the firing from the totality of the facts. I conclude YDP's action in firing the plaintiff is chargeable to the State and thus constitutes State action. I would affirm the judgment of the Superior Court.