ROBERT GARDNER *vs.* GOVERNOR APARTMENTS ASSOCIATES
& others.[1]

Suffolk.  October 9, 1985. — February 3, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Civil Rights,* Availability of remedy. *Constitutional Law,* State action.
*Landlord and Tenant,* Reprisal against tenant.

The fact that a landlord had been authorized by the Boston Redevelopment
Authority pursuant to G. L. c. 121A to rehabilitate certain premises and
had received governmental assistance in carrying out the project did not
entitle a former tenant of the premises to relief under 42 U.S.C. § 1983
(1982) for the landlord's wrongful conduct in refusing to permit the
tenant to return to the rehabilitated premises in retaliation for the tenant's
exercise of rights under G. L. c. 186, § 18, where there was no State
involvement in the landlord's wrongful conduct. [664-665]

CIVIL ACTION commenced in the Boston Division of the
Housing Court Department on November 9, 1981.

The case was heard by *Patrick J. King,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Steven M. Brody* for the defendants.

*Gerald E. Katz* for the plaintiff.

WILKINS, J. We consider here whether the ruling of a judge
of the Boston Housing Court that the plaintiff is entitled to
relief under 42 U.S.C. § 1983 (1982) is correct. We conclude
that no State action was involved in the wrongs the defendants
committed and consequently that Gardner is not entitled to
relief under § 1983.

[1] Governor Apartments Associates, along with the defendants Gerald
Schuster, general partner, and Continental Wingate Company, Inc., general
partner, is a limited partnership. The other defendant, Wingate Management
Company, Inc., is a subsidiary of Continental Wingate Company, Inc., and
acted as manager of the premises involved in this case. We shall refer to
the defendants collectively.

Gardner was a tenant in the defendants' premises at 197 Kelton Street in the Brighton section of Boston from May, 1975, until February, 1981, when he moved as a tenant to other premises owned by the defendants in Brighton. In September, 1980, the Boston Redevelopment Authority had authorized the defendants to rehabilitate the premises on Kelton Street, pursuant to G. L. c. 121A (1984 ed.). Gardner was one of the tenants who were relocated to enable the defendants to rehabilitate the premises. He received assurances from the defendant Wingate Management Company, the designated relocation agency under G. L. c. 79A (1984 ed.), that he could reoccupy the rebuilt premises. In the fall of 1981 tenants began moving into the rehabilitated building.

The defendants decided, however, on what the judge found to be pretexts, that Gardner was not entitled to return. Gardner had opposed the defendants in various ways, such as suing to challenge the Boston Redevelopment Authority's approval of the G. L. c. 121A tax agreement, helping to organize a union of all the defendants' tenants in Boston, and persuading the housing inspection department of Boston to inspect sixty apartments owned by the defendants for sanitary code violations. The judge found that the defendants knew Gardner well as "a source of constant consternation . . . because of his engagement in various activities protected under [G. L. c. 186, § 18]."

The trial judge issued two orders for judgment in this case. First, in March, 1982, he directed the defendants promptly to provide Gardner with a suitable apartment within the rehabilitated premises. The judge concluded that the defendants had broken their agreement with Gardner that he could return to the premises and had attempted to deprive Gardner of his rights under State law in retaliation for his activism. In the first order, the judge did not consider whether the defendants had violated 42 U.S.C. § 1983 (1982), and thus did not face the question whether Gardner's Federal rights had been infringed by a person engaging in State action.

The second order, entered in December, 1983, dealt with Gardner's claim for damages based on (a) G. L. c. 186, § 18 (1984 ed.) (concerning reprisals against a tenant for engaging

in certain protected activities), (b) 42 U.S.C. § 1983 (1982), and (c) G. L. c. 12, § 11I (1984 ed.) (the State "equivalent" of § 1983). The judge found a violation of G. L. c. 186, § 18, and awarded Gardner damages of three months' rent, the maximum amount allowable absent a showing of actual damages. He awarded no attorney's fees under § 18 because he did so under 42 U.S.C. § 1988 (1982), as to the § 1983 action. The judge further found a violation of G. L. c. 12, § 11I, but he awarded no damages on this claim because he allowed recovery under other theories of liability. Finally, the judge determined that the defendants' refusal to allow Gardner to move back into the rehabilitated premises violated rights secured to him by State and Federal law. The judge then concluded that these were actions of the State itself, citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974), and two earlier Federal Circuit Courts of Appeal decisions cited below, and awarded Gardner punitive damages of $20,000 and attorney's fees of $10,000.[2]

The second order was entered one week before this court issued its opinion in *Phillips* v. *Youth Dev. Program, Inc.*, 390 Mass. 652 (1983), concerning the meaning of State action under § 1983. The judge's memorandum mentions neither the Appeals Court opinion in the *Phillips* case (14 Mass. App. Ct. 626 [1982]), nor the trilogy of Supreme Court opinions on the same subject issued on June 25, 1982. See *Blum* v. *Yaretsky*, 457 U.S. 991 (1982); *Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922 (1982); *Rendell-Baker* v. *Kohn*, 457 U.S. 830 (1982). Any analysis of the meaning of State action within the purposes of § 1983 must take into account the restrictive views that those opinions express on the scope of § 1983.

The judge made no finding that any State official or employee had been involved directly or indirectly in the denial of Gardner's rights. He made no explicit ruling as to which Federal

---

[2] Because the statute does not authorize an award of punitive damages, only compensatory damages may be recovered under G. L. c. 12, § 11I. See *USM Corp.* v. *Marson Fastener Corp.*, 392 Mass. 334, 353 (1984). Therefore, we must consider the soundness of Gardner's § 1983 claim, the only theory under which punitive damages such as were awarded could be recovered.

law violated by the defendants was the basis of Gardner's Federal (§ 1983) claim.[3] In ruling that State action was involved in the defendants' conduct, the judge relied exclusively on the role the defendants assumed in rehabilitating residential housing pursuant to State statutes and regulations.

Under G. L. c. 121A, § 2, an authorized corporation is engaged in developing property for the purpose of eliminating blighted, decadent, or substandard conditions, and it receives governmental assistance such as subsidized rents (42 U.S.C. § 1437[f] [1982]), tax benefits (G. L. c. 121A, § 10), and financial assistance in relocating tenants (G. L. c. 79A, § 3 [1984 ed.]). Although these facts alone, coupled with general governmental regulation, might once have sustained a ruling that action by such a corporation against tenants (or a relocated tenant) constitutes State action for purposes of § 1983 (see, e.g., *Geneva Towers Tenants Org.* v. *Federated Mortgage Investors,* 504 F.2d 483, 488 [9th Cir. 1974]; *McQueen* v. *Drucker,* 438 F.2d 781, 784-785 [1st Cir. 1971], on which the trial judge relied), recent Supreme Court cases require more. See *Blum* v. *Yaretsky, supra* at 1011. The act of improving the housing stock of the Commonwealth pursuant to incentives established by law is not per se State action.

There is no record support for a claim that either State policy or an official or employee of the State was behind the defendants' wrongful conduct. The defendants' actions were not prescribed by the State, nor did any State official put the weight or the authority of the State behind those actions. In short, this case involves neither wrongful action compelled or encouraged by the State (see *Blum* v. *Yaretsky,* 457 U.S. 991, 1004-1005 [1982]), nor "the abuse of authority doctrine recognized in *Monroe* v. *Pape,* 365 U.S. 167 (1961)" (see *Lugar* v. *Edmondson Oil Co.,* 457 U.S. 922, 940 [1982]). There is no suggestion here that the Commonwealth was a joint participant in, or that it profited in any way from, the defendants' challenged activity. See *Burton* v. *Wilmington Parking Auth.,* 365

---

[3] We accept, for the purposes of this case only, Gardner's assertion that the defendants violated one or more of his Federal rights.

U.S. 715, 724 (1961). Nor is the activity of rehabilitating decadent housing traditionally an exclusive governmental function. See *Fantasy Book Shop, Inc.* v. *Boston,* 531 F. Supp. 821, 824 (D. Mass. 1982).

Thus, "the focus must be on whether government action was involved in the particular conduct that is challenged as wrongful." *Phillips* v. *Youth Dev. Program, Inc.,* 390 Mass. at 656. See *Blum* v. *Yaretsky, supra* at 1004; *Rendell-Baker* v. *Kohn, supra* at 839-841. Only if the State has coerced or significantly encouraged the private decision can it "be said that the State is *responsible* for the specific conduct of which the plaintiff complains" (emphasis in original). *Blum* v. *Yaretsky, supra.* See *Kolinske* v. *Lubbers,* 712 F.2d 471, 480 (D.C. Cir. 1983). Compare *Miller* v. *Hartwood Apartments, Ltd.,* 689 F.2d 1239, 1243-1244 (5th Cir. 1982) (no State action where no government staff was involved in apartment management, including tenancy and eviction decisions), with *Jeffries* v. *Georgia Residential Fin. Auth.,* 678 F.2d 919, 923 (11th Cir.), cert. denied, 459 U.S. 971 (1982) (State action where government agency participated in eviction procedures). The circumstances of this case, including the fact that one of the defendants acted as a relocation agency, do not permit the conclusion that State action was involved in the defendants' wrongful conduct. Gardner, therefore, was not entitled to relief under § 1983.

The defendants do not challenge the portion of the judgment entered against them under G. L. c. 186, § 18. They acknowledge that they are liable for attorney's fees under § 18 (and, we think also, provided there is no duplication of fees, under G. L. c. 12, § 11I). The case should be remanded for a determination of attorney's fees under those statutes. Because Gardner did not prevail on his Federal claim for punitive damages, an award of attorney's fees would be inappropriate under 42 U.S.C. § 1988 (1982).

The judgment is vacated, and the case is remanded to the Housing Court of the City of Boston for determination of attorney's fees and the entry of judgment consistent with this opinion.

*So ordered.*