JOHN T. O'CONNOR, JR. *vs.* POLICE COMMISSIONER OF
BOSTON & another.[1]

Suffolk. April 5, 1990. - August 13, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Civil Rights*, Availability of remedy. *Controlled Substances. Search and
Seizure*, Urine sample. *Constitutional Law*, Search and seizure. *Pri-
vacy. Due Process of Law*, Termination of employment. *Police*, Urine
testing, Discharge.

An unannounced, warrantless, and suspicionless testing of the urine of all
cadets assigned to a police training academy did not constitute an un-
reasonable search and seizure in violation of art. 14 of the Massachu-
setts Constitution, where the public interest in discovering and deter-
ring drug use by police cadets who had agreed in advance to urine
testing outweighed the intrusiveness into their reasonably expected pri-
vacy. [326-329] LIACOS, C.J. concurring; GREANEY, J., with whom
LIACOS, C.J., and ABRAMS, J., joined, concurring.
An unannounced, warrantless, and suspicionless testing of the urine of all
cadets assigned to a police training academy did not constitute an un-
reasonable invasion of privacy under G. L. c. 214, § 1B, where the po-
lice department operating the academy had compelling interests in de-
termining whether cadets were using drugs and in deterring such use
which outweighed the cadets' privacy interests, and where any interfer-
ence with the cadets' privacy rights was neither "substantial" nor "seri-
ous" within the statutory meaning of those words. [329-331]
A discharged police academy cadet's due process claims under the Federal
and State Constitutions were not timely raised. [331]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 16, 1987.

The case was heard by *Elbert Tuttle*, J., on a motion for
partial summary judgment.

---

[1]The city of Boston.

The Supreme Judicial Court granted a request for direct appellate review.

*James F. Lamond* for the plaintiff.

*Kevin S. McDermott*, Special Assistant Corporation Counsel (*Zara Kilmurray* with him) for the defendants.

*Charles R. Dougherty, William R. Forbush, & John Reinstein*, for Massachusetts Civil Liberties Union Foundation, amicus curiae, submitted a brief.

O'CONNOR, J. The plaintiff was a police officer on probationary status in the Boston police department (department). He was assigned to the Boston Police Academy to train as a cadet for twenty weeks. The plaintiff was dismissed from the department after the department was notified by the company it had retained to conduct drug screening tests that the plaintiff's urinalysis test had revealed traces of cocaine. The plaintiff denied using cocaine. His request for permission to submit another urine sample was refused. On the day following the dismissal, a captain of the department informed the other cadets that the plaintiff had been discharged "because he had tested positive for drug use."

The plaintiff brought this action seeking, among other forms of relief, a declaration that the defendants violated the plaintiff's rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States and by arts. 12 and 14 of the Declaration of Rights of the Massachusetts Constitution. The plaintiff also sought an order of reinstatement without loss of compensation and damages. In seven counts, the plaintiff asserts in his complaint that his rights to the various forms of relief he requests are grounded directly on the alleged violations of his constitutional rights, see *Bivens* v. *Six Unknown Named Agents of Bureau of Narcotics*, 403 U.S. 388, 396-397 (1971); *Layne* v. *Superintendent, Mass. Correctional Inst., Cedar Junction*, 406 Mass. 156, 159-161 (1989); *Phillips* v. *Youth Dev. Program, Inc.*, 390 Mass. 652, 657-658 (1983), and on the provisions of G. L. c. 12, §§ 11H and 11I (1988 ed.) (Massachusetts Civil Rights Act), and G. L. c. 214, § 1B (1988 ed.) (right of privacy statute).

The plaintiff moved for summary judgment as to liability. The parties submitted a statement of agreed facts, affidavits, and excerpts from depositions. A judge ordered summary judgment for the defendants on all counts. The plaintiff appealed, and we allowed the plaintiff's application for direct appellate review. We now affirm the judgment entered in the Superior Court.[2]

In addition to the facts set forth above, the materials submitted to the motion judge establish other facts as follows. As a condition of employment, the plaintiff was required to agree in writing to submit to urinalysis when requested to by the department. Thereafter, all the cadets were required without prior notice (apart from the aforesaid agreement) to provide a urine sample. The plaintiff was observed by department officers while urinating. Approximately one week later, every cadet was required to submit a second urine sample. These samples were discarded after a foreign object was found in one of the specimen bottles. On October 6, 1986, a third urine sample was required from all the cadets, and three days thereafter the plaintiff was dismissed.

On appeal, the plaintiff argues that the unannounced, warrantless, and suspicionless testing of all the cadets was an unreasonable search and seizure in violation of art. 14 of the Declaration of Rights of the Massachusetts Constitution.[3,4] The defendants properly concede that the testing procedure constituted a search and seizure within the meaning of art. 14, see *Horsemen's Benevolent & Protective Ass'n, Inc.* v. *State Racing Comm'n*, 403 Mass. 692, 699-700 (1989), but the defendants do not agree that the search and seizure were "unreasonable."

---

[2]We acknowledge the brief submitted by the Massachusetts Civil Liberties Foundation as amicus curiae.

[3]On appeal, the plaintiff does not argue that the drug testing violated his rights secured by the Fourth Amendment.

[4]Art. 14 provides in pertinent part, "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions."

The reliability of the testing is not at issue in this case. Rather, we must decide whether the search and seizure were "unreasonable" within the meaning of art. 14. We begin our analysis with a discussion of *National Treasury Employees Union* v. *Von Raab*, 489 U.S. 656 (1989). The facts, reasoning, and holding of that case are instructive. There, the Supreme Court held that a United States Customs Service drug testing program that required testing of all employees seeking positions directly involving the interdiction of drugs or the carrying of a firearm was compatible with the Fourth Amendment. The Court reiterated the general rule that a search and seizure must be supported by a warrant issued on the basis of probable cause to meet the Fourth Amendment's "reasonableness" requirement. But the Court also reaffirmed the principle that "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance. . . . [W]here a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." (Citations omitted.) *Id.* at 665.

The Supreme Court recognized that "[t]he interference with individual privacy that results from the collection of a urine sample for subsequent chemical analysis could be substantial in some circumstances," *id.* at 671, but nevertheless reasoned that those individual privacy interests were outweighed by "the Government's compelling interests in safety and in the integrity of [the nation's] borders." *Id.* at 672. The Court held that "the suspicionless testing of employees who apply for promotion to positions directly involving the interdiction of illegal drugs, or to positions which require the incumbent to carry a firearm, is reasonable. The Government's compelling interests in preventing the promotion of drug users to positions where they might endanger the integrity of our Nation's borders or the life of the citizenry out-

weigh the privacy interests of those who seek promotion to these positions, who enjoy a diminished expectation of privacy by virtue of the special, and obvious, physical and ethical demands of those positions." *Id.* at 679.

As the Supreme Court has done in the Fourth Amendment context, this court has recognized limited exceptions to the warrant and probable cause requirements where, to determine a search's reasonableness and, therefore, validity, we have balanced the governmental need for the search against the search's intrusiveness into a person's reasonably expected privacy. See *Horsemen's Benevolent & Protective Ass'n, Inc.* v. *State Racing Comm'n, supra* at 704; *Commonwealth* v. *Shields,* 402 Mass. 162, 164 (1988); *Commonwealth* v. *Trumble,* 396 Mass. 81, 88-90 (1985). We employ the same process in this case. In doing so, we do not take lightly the intrusiveness of collecting a urine sample and subjecting it to chemical analysis, including the fact that such testing may be capable of revealing not only illicit drug use but other personal information, such as pregnancy, as well. We accept as true, too, that the intrusiveness is increased by cadets' being monitored in the act of urinating (a practice that helps to ensure the integrity of the urine sample). However, we also take into account, as a factor that diminishes the degree of intrusiveness, that the cadets agreed to urinalysis testing before accepting employment.

We are satisfied that the public interest in discovering and deterring drug use by police cadets who have agreed in advance to urinalysis testing is of sufficient weight that such testing is reasonable within the meaning of art. 14. Drug use is often difficult to discern. Yet, drug use by police officers has the obvious potential, inimical to public safety and the safety of fellow officers, to impair the perception, judgment, physical fitness, and integrity of the users. Furthermore, the unlawful obtaining, possession, and use of drugs cannot be reconciled with respect for the law. Surely, the public interest requires that those charged with responsibility to enforce the law respect it. Surely, too, public confidence in the police is a social necessity and is enhanced by procedures that deter

drug use by police cadets. See *National Treasury Employees Union* v. *Von Raab, supra* at 672; *Guiney* v. *Roache,* 873 F.2d 1557, 1558 (1st Cir.), cert. denied, 493 U.S. 963 (1989); *National Fed'n of Fed. Employees* v. *Cheney,* 884 F.2d 603, 612-613 (D.C. Cir. 1989), cert. denied, 110 S. Ct. 864 (1990); *American Fed'n of Gov't Employees* v. *Skinner,* 885 F.2d 884, 890-893 (D.C. Cir. 1989); *McKenzie* v. *Jackson,* 75 N.Y.2d 995 (1990).

The Chief Justice, in his concurring opinion, states that the cadets' written agreement to submit to urinalysis testing constitutes consent, and that, given such consent, the court's "resort to the manipulable balancing inquiry" is inappropriate. Obviously, we do not agree. Surely, the plaintiff would not be barred from relief if his consent to be the subject of a search and seizure were unreasonably required as a condition of employment. For example, if the plaintiff were seeking employment as a laborer, the State could not constitutionally require his consent to urinalysis testing as a precondition to such employment, and any consent given would be ineffective. The Chief Justice's focus on the plaintiff as one seeking to become a police officer "authorized to carry and use a firearm" suggests that, in his view, the nature of the plaintiff's employment makes a difference, that the reasonableness of the consent requirement must be considered, and that what is reasonable depends on the circumstances. Implicitly, the Chief Justice's approach accepts the necessity of the court's balancing the competing interests of the individual and the public. The other concurring Justices, despite their disclaimer, have also engaged in a balancing of the cadets' interest against that of the public employer.

Our determination that the warrantless, suspicionless urinalysis testing of police cadets in the circumstances of this case is not "unreasonable" within the meaning of art. 14 not only disposes of the plaintiff's claims based directly on art. 14 but it substantially resolves the plaintiff's claim under G. L. c. 214, § 1B, as well. Chapter 214, § 1B, provides in relevant part that "[a] person shall have a right against unreasonable, substantial or serious interference with his pri-

vacy." The plaintiff makes two arguments: (1) the test to which he was subjected was an unreasonable invasion of his privacy, (2) the statute provides a right against an invasion of privacy that is either unreasonable or, in any event, is substantial or serious.

We have recognized that, in "private employment[,] there may be inquiries of a personal nature that are unreasonably intrusive and no business of the employer." *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 520 (1984), quoting *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 308 n.9 (1982). The same may be said about public employment. To determine whether the inquiry amounts to a violation of c. 214, § 1B, however, "the employer's legitimate interest in determining the employees' effectiveness in their jobs should be balanced against the seriousness of the intrusion on the employees' privacy." *Bratt, supra* at 520. Regardless of whether the urinalysis conducted in this case constitutes an "inquiry" as referred to in *Bratt*, the test of reasonableness depends on a balancing of the competing interests of the plaintiff and the defendants, the very process we undertook in considering the plaintiff's art. 14 claim. As we have said, the defendants had a compelling interest in determining whether cadets were using drugs and in deterring such use. Those interests outweigh the plaintiff's privacy interest not only under art. 14, but under G. L. c. 214, § 1B, as well.

The plaintiff's second argument in reference to G. L. c. 214, § 1B, is that the words in the statute, "unreasonable, substantial or serious," are "phrased disjunctively," so that, even if the interference with the plaintiff's privacy were reasonable, it is nevertheless actionable on the ground that it was substantial or serious or both. We think that it is highly unlikely that the Legislature intended to provide a right of action to a person whose privacy was substantially or seriously interfered with, but reasonably so. However, we need not resolve that question of statutory construction because, in any event, we are satisfied that, in light of all the circumstances, including the plaintiff's preemployment agreement to submit to urinalysis testing, any interference with his privacy

rights was neither "substantial" nor "serious" within the meaning of those statutory words.

We turn now to the plaintiff's claim that, by refusing to grant him a name-clearing hearing after discharging him and notifying the other cadets that the dismissal had resulted from the plaintiff's positive urinalysis result, the defendants violated the plaintiff's due process rights secured by the Fourteenth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution. See *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 573 (1972); *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 762-763 (1976); *Smith* v. *Commissioner of Mental Retardation*, 28 Mass. App. Ct. 628, 634-635 (1990). The short, and we think adequate, answer to this claim is that although the motion judge considered, and rejected, the claim on its merits, there is nothing in the materials submitted to the judge or even in the pleadings that suggests that the plaintiff ever requested the defendants to provide a hearing. The plaintiff's denial that he used drugs and his request to be retested neither expressly nor impliedly constitute a request for a hearing concerning the accuracy of the test he underwent. We note that, even on appeal, the plaintiff does not appear to seek an order that would require the defendants to provide a hearing. The plaintiff's due process claims under the Federal and State Constitutions have come too late, and, for that reason alone, fail.

Finally, we briefly address the plaintiff's claim based on G. L. c. 12, §§ 11H and 11I. We quote from the plaintiff's brief as follows. "[The plaintiff] contends that the termination of his employment following the required urinalysis drug testing was violative of rights secured to him under art. 14 of the Massachusetts constitution and the Massachusetts Privacy Act. He also contends the Defendants wrongfully denied him his right to a name-clearing hearing. If this Court concurs with [the plaintiff's] claims in the above regard, it should also rule that the Superior Court thereby erred in granting summary judgment against [the plaintiff] on his

civil rights claim." Since we do not concur with the plaintiff's other claims, we also reject the claim under G. L. c. 12.

*Judgment affirmed.*

LIACOS, C.J. (concurring). I hold fast to my belief that the court's reliance on balancing public interests against privacy interests will continue to erode the protections of art. 14. See *Horsemen's Benevolent & Protection Ass'n, Inc.* v. *State Racing Comm'n,* 403 Mass. 692, 707 (1989) (Liacos, J., concurring); *Commonwealth* v. *Shields,* 402 Mass. 162, 169 (1988) (Liacos, J., dissenting). The issue of the propriety of such balancing tests, at least with respect to drug testing, has been foreclosed to me by the *Horsemen's* case. In my view, this case could be disposed of without resort to a manipulable balancing inquiry. The court should hold that, when one seeks to become a police officer authorized to carry and use a firearm and agrees in writing to submit to urinalysis testing for illicit drugs, that person has consented to such testing.

GREANEY, J. (concurring, with whom Liacos, C.J., and Abrams, J. join). I agree with the Chief Justice that this is not an appropriate case in which to apply a balancing test to overrule the important constitutional right of privacy established by art. 14. This is especially so when the protected right is being measured against abstract goals of safety and integrity recited in the court's opinion; goals that are formulated without any factual information in the record to demonstrate the frequency of drug use by police officers or to demonstrate any connection between such use and grave harm to the force or public safety. A dubious foundation is thus laid by the opinion for the future expansion of government power to search large numbers of the public workforce without a warrant, without probable cause, and without reason to suspect them of any unlawful act.

In my view, the balancing approach should play no part in the resolution of the art. 14 issue in this case. On the limited record before us, I conclude that the judgment should be upheld on the narrow basis of the plaintiff's job status and the consent form that he signed. The job of a police officer is treated specially under civil service law, as indicated by the Legislature's provision in G. L. c. 31, § 61 (1988 ed.), that a new officer actually perform the duties of a police officer "on a full-time basis for a probationary period of twelve months before he shall be considered a full-time tenured employee in such position." During this twelve-month probationary period, the police officer may be terminated pursuant to G. L. c. 31, § 34 (1988 ed.), for reasons relating to his "conduct or capacity" or to "the character or quality" of his work performance.

During such a probationary period of employment, an employer has an interest, which the law recognizes and protects, in closely monitoring the behavior, performance, and capacity of an employee. The probationary employee has a correspondingly diminished expectation of and interest in what may not be required of him by the employer as necessary or appropriate to evaluate his conduct and capacity and the quality of his work. In the case of permanent employees it could be argued that random drug testing "is unnecessary because proper supervision of employees plus [at least] the reasonable suspicion test should ordinarily suffice to turn up those who ought to be tested. But for beginning employees there has been no prior opportunity for such ongoing scrutiny, and thus it is certainly arguable that testing as a matter of course is appropriate in such circumstances." LaFave, Search and Seizure (2d ed.) § 10.3, 1990 supplement at 86.

The plaintiff in this case is a police officer on probationary status, the consent form which he signed (the substance of which is set forth below)[1] is based upon a lawful rule of the

---

[1] "[I]n consideration of my appointment as a police officer in the Boston Police Department, [I] agree and consent to submit to certain tests including, but not limited to, laboratory examination and analysis of urine samples which I agree to submit to the Boston Police Department when re-

police department prohibiting the use of prescription drugs, controlled substances, narcotics, or hallucinogens except as properly prescribed for medical needs, and the plaintiff's consent is expressly limited in duration to the period of probationary employment established by the civil service law. During this probationary period, the plaintiff's employer has a legitimate right to be informed about the health, capacity, and character of a prospective permanent employee, and to know, in particular, whether the employee is or will become dependent on drugs or other harmful substances, whether he is or will become impaired by the use of illegal substances, whether he can safely handle a firearm, whether he can perform adequately in emergency and stressful situations, whether he can abide by department regulations, and whether he is otherwise law-abiding. As a condition of probationary employment, an employee can lawfully agree to drug screening tests for a limited period of time as a condition of the proper evaluation of his ultimate entitlement to tenured employment. The issue in this case thus comes to rest at this point, and it is unnecessary to seek out, or urge, any broader analysis that suggests that art. 14 should be read to permit the search of many innocent people in the hope that a few offenders might be discovered.

---

quested to do so for the purpose of determining whether I have unlawfully used any prescription drugs, controlled substances, narcotics or hallucinogens, so defined in Massachusetts General Laws, Chapter 94C.

"This agreement shall remain in full force and effect for the period of time during which I remain in a probationary status pursuant to Massachusetts General Laws Chapter 32, Sections 34 and 61.

"I acknowledge and understand that Boston Police Department Rule 102, Section 16 prohibits the use of any prescription drugs, controlled substances, narcotics, or hallucinogens except when prescribed by a registered physician or dentist and that I must immediately notify my superior officer or supervisor, in writing, before the next tour of duty of such prescription, when any prescription drug, controlled substance, narcotic or hallucinogen has been prescribed for my use."