Brady, J.
Sandra F. LaFleur[1] (“LaFleur”) has brought suit against former employer Bird-Johnson Company (“Bird-Johnson”) alleging invasion of privacy, handicap discrimination, sexual orientation discrimination, sexual harassment, wrongful termination, civil rights violations, and breach of contract (Counts I through VII, respectively).
Bird-Johnson has moved[2] for summary judgment on all seven counts. For the reasons discussed below, the defendant’s motion is ALLOWED as to all counts.[3]
FACTS
The following facts are undisputed and are taken from the pleadings, affidavits, and depositions of the parties.
Bird-Johnson, a manufacturer of marine propellers for commercial ships and U.S. Navy vessels, hired the plaintiff as a Level “B”[4] machinist in March 1985. LaFleur worked at Bird-Johnson’s Walpole, Massachusetts manufacturing facility and held a governmental security clearance.
The primary task of a Bird-Johnson machinist is to convert raw metal into finished propeller parts through the use of machine tools. From March 1985 until January of 1990, LaFleur received satisfactory performance reviews, and in 1988 was commended for submitting a cost-saving proposal.
*197 LaFleur’s personnel file for this period also reflects a number of written warnings, including two formal warnings. The reasons for these warnings included: poor use of time, reading magazines while the machine was running, carelessness, using wrong machine tools, and mismatching parts.
On January 29, 1990 LaFleur attempted to commit suicide[5] during her work shift at Bird-Johnson and was hospitalized as a result. After some weeks’ absence, LaFleur resumed her position as a Level “B” machinist in March. During the period of March to September 1990, LaFleur “came out” to certain coworkers and management personnel as an individual who wished to effect a female persona through wearing female attire.[6] In the succeeding months LaFleur began increasingly to wear female attire on the job, eventually coming to work fully outfitted in women’s clothing.
In October 1990[7] LaFleur notified her employer that she officially had changed her name from “Richard Marcel” to “Sandra Fay.” LaFleur completed a Bird-Johnson name change form to reflect this change.
Between her return to work in March 1990 and December 1990, LaFleur was “written up” an additional eight times for performance-related reasons, including two written warnings and a three-day suspension.
LaFleur’s “coming out” at the workplace elicited a variety of responses from her co-workers ranging from support to annoyance and derision (Greto Deposition, p. 74). During this period LaFleur asked her supervisor for permission to use a private restroom located in the office area.[8] The plaintiff wanted access to this bathroom so that she could change in and out of her workclothes away from the stares of her co-workers. The “handicapped” restroom previously had been made available to one Anna Conner, the only biological female working on that shift.
In 1990 Susan Buongiorno (“Buongiorno”) of Bird-Johnson’s security department began reporting her observations of LaFleur’s female appearance to the federal government. (Buongiorno Deposition, pages 29-31.) On February 24, 1991 a certified letter addressed to the plaintiff from the Tiffany Club[9] was delivered to the Bird-Johnson Company. Buongiorno opened both the inner and outer envelopes.[10] The opened letter was then delivered to Sandra LaFleur at her work station.
In March 1991 Bird-Johnson laid off five out of its nine machinists. The plaintiff was one of those laid off.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). A party moving for summary judgment may demonstrate the absence of a triable issue by submitting evidence negating an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesnerv. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouuacilis u. General Motors Corp., 410 Mass. 706, 716 (1991). With this standard in mind, I shall consider each count separately.
A. Count I: Invasion of Privacy
Count I alleges the defendant invaded LaFleur’s privacy in violation of G.L.c. 214, §1B when security officer Buongiorno opened mail addressed to LaFleur and delivered via Certified Mail to Bird-Johnson’s premises on February 20, 1991.
Chapter 214, §1B prohibits “unreasonable, substantial, or serious” interference with an individual’s privacy. The court must determine the extent of the alleged interference by weighing “the employer’s legitimate interest” against “the seriousness of the intrusion on the employee’s privacy.” O’Connor v. Police Commissioner of Boston, 408 Mass. 324, 330 (1990), quoting Bratt v. International Business Machines Corp., 392 Mass. 508, 520 (1984).
As a defense contractor, Bird-Johnson is required by the federal government to maintain strict policies and procedures regarding the receipt and handling of mail.[11] These procedures control the opening of the certified mail addressed to the plaintiff.
While LaFleur alleges Buongiorno was aware of the letter’s contents, the plaintiff presents no evidence to rebut Bird-Johnson’s explanation that Buongiorno took only those actions as required by the federal government to protect security-related information. In short, Bird-Johnson asserts that when Buongiorno realized the letter was not classified, she returned it to its envelope, sealed it, and placed it in the internal company mail to be delivered to LaFleur.[12]
Applying these facts to the standard enunciated in O’Connor, Bird-Johnson’s legitimate interest — to honor its duty to aid in the protection of national security — outweighs the potential invasion of LaFleur’s privacy. O’Connor, 408 Mass, at 330 (1990). Moreover, LaFleur presents no evidence to support her allegation that other Bird-Johnson employees ever learned the nature of the information contained in the letter.[13]
Even assuming, arguendo, that other employees had learned of the letter’s contents, the potential intrusion under the O’Connor standard is small since what ultimately is revealed about this letter is that: (1) it was sent by The Tiffany Club (a social club including cross-dressers among its membership); and, (2) that its writer expressed concern that the plaintiff was depressed and suicidal. These two areas of information (plaintiffs cross-dressing and her depressive/sui *198 cidal tendencies) already were well known at Bird-Johnson and had been known for a year before her lay off.[14]
Thus, even if the letter had been read by Bird-Johnson employees, LaFleur’s arguments that this constituted a serious intrusion, or that her lay-off was causally related to the revelation of the letter’s contents, are without merit. The motion for summary judgment on Count I is therefore allowed.
B. Count II: Handicap Discrimination
In Count II of her complaint LaFleur alleges violations of G.L.c. 151B and G.L.c. 93, §103.[15] LaFleur purports to suffer from two c. 151B “handicaps”: depression and transsexualism.
1. Procedural Issues
A threshold issue exists as to whether this court is empowered to hear either of LaFleur’s claims of alleged handicap discrimination under c. 151B.
In Massachusetts the comprehensive statutoiy' scheme providing remedies for unlawful employment discrimination is c. 15 IB. At section 9 it requires that a claimant file a timely charge with the Massachusetts Commission Against Discrimination ("MCAD”) before filing a discrimination claim in the trial court. See Cherella v. Phoenix Technologies Ltd., 32 Mass.App.Ct. 919 (1992). The mere timely filing of a claim with the MCAD does not satisfy the plaintiffs duty under §9; rather, the plaintiffs Superior Court claims must have been included in the previous MCAD complaint or they are considered waived. See Conroy u. Boston Edison Co., 758 F.Supp. 54, 58 (D.Mass. 1991).
LaFleur’s MCAD complaint asserted[16] two claims: age discrimination and sexual orientation discrimination. In light of these statutory requirements (as interpreted unambiguously in the Conroy decision), she cannot now allege handicap discrimination. Her claim is therefore barred.
2. Substantive Issues
Even if LaFleur were able to clear the above-described procedural hurdle, her handicap discrimination claim must fail.
LaFleur asserts she suffers from both depression and transsexualism.[17] Chapter 151B, §1(17) defines a “handicapped person” as “any person who has a physical or mental impairment which substantially limits one or more of such person’s major life activities.” Where a handicap impedes the performance of an essential job function, an employee is obliged to request his or her employer to provide an accommodation. Unless the employee has an obvious handicap and the employer “knows of an accommodation which will assist that person in performing essential job functions” the employer is under no obligation to provide such an accommodation unless the employee asks for it. MCAD Regulations, 8 MDLR at 2016-17. Thus, employees may find relief under the statute in situations where they are fired for failure to perform a job’s essential functions and where — in spite of their requests — the employer denied them the reasonable accommodations which would have permitted them to do the job. In this way, the c. 151B handicap discrimination plaintiff must causally “link” the employer’s action (through, for example, a firing or lay-off) to the reasonable accommodation which was requested and denied.[18]
LaFleur’s claims for discrimination due to her “handicaps” of depression and transsexualism must fail. In contrast to the requirements of c. 15IB, LaFleur did not identify these “handicaps” and did not request from her employer a special accommodation for either. Bird-Johnson was not obliged to provide an accommodation where LaFleur presented no evidence to support that her layoff was related[19] to or motivated by her handicaps of transsexualism and depression.
For the purposes of this motion Bird-Johnson does not dispute that LaFleur is handicapped by depression. However, LaFleur does not demonstrate that Bird-Johnson failed to accommodate her in the performance of an essential job function which was compromised due to LaFleur’s depression. Further, there is no evidence to support the claim that the layoff was motivated by the employer’s unwillingness to accommodate LaFleur’s alleged handicap of depression.
LaFleur’s claim for transsexual discrimination must fail for the same reasons and, further, because transsexualism is not a recognized handicap. While no Massachusetts decisions have interpreted c. 151, §1(17) with respect to transsexualism, cases from other jurisdictions with virtually identical statutes have held that transsexualism is not a legally cognizable handicap.
For example, the Iowa Supreme Court, interpreting a similar statute to c. 15 IB in Sommers v. ICRC, 47 FEP Cases 1217 (Iowa 1983), held that transsexualism is not “a physical or mental impairment which substantially limits one or more major life activities.”
Even if transsexualism were a recognized handicap under Massachusetts law, LaFleur has not established that she is now a transsexual or that she was a transsexual during her tenure with Bird-Johnson. While working at Bird-Johnson, LaFleur described herself as a transvestite, and not as a transsexual. Moreover, mental health professionals who treated LaFleur during her tenure as a machinist describe her as a transvestite, not a transsexual.[20] Finally, her current psychiatrist, Sanford R. Gifford, testified that his sole diagnosis of LaFleur was depression:
Q. What is your diagnosis of LaFleur or diagnoses?
A. Well, I just made one diagnosis. Dysthymia, which means a neurotic depression.
(Gifford Deposition, p. 46.) Later, Dr. Gifford states:
A. [T]o tell you the truth, I think we’re wasting our time talking about transsexualism. I think the issue is her depression and why she is depressed.
*199 (Id. at 52.)
Thus, Bird-Johnson has aptly shown that transsexualism is not a cognizable[21] handicap under Massachusetts (and possibly under any state’s) law. Moreover, even if it were recognized as a handicap, the defendant has demonstrated that proof of LaFleur’s alleged transsexualism is unlikely to be forthcoming at trial. Summary judgment is therefore appropriate.
C.Count III: Sexual Orientation Discrimination
In Count III of her complaint, LaFleur alleges discrimination based on perceived sexual orientation under G.L.c. 151B.[22] (While LaFleur does not argue she is a homosexual, her complaint asserts that others perceived her as such.)
The MCAD enunciated the standard for sexual harassment in its decision in Ramsdell v. Western Mass. Bus Lines, 13 MDLR 1087, 1113-14 (1991):
To constitute sexual harassment, the conduct must be sufficiently pervasive and severe to alter the conditions of the victim’s employment and create an abusive working environment. Casual comments or accidental or sporadic conversation are insufficient to constitute a pervasive, hostile environment . . . The inquiry . . . [is] whether the conduct was repeated often enough to a point that it became ... a condition of the employment.
See also College-Town v. MCAD, 400 Mass. 156, 162 (1987).
Applying these standards to the facts of the present case, LaFleur’s Count II claim must fail. First, LaFleur does not demonstrate the level of pervasiveness and severity required to establish sexual harassment under the law.[23] The co-workers’ comments to which LaFleur points must be construed — unkind as they may be — to be the type of “casual comments” and “sporadic conversation” which the Ramsdell decision teaches are not sufficient to form the basis of a hostile environment claim. Ramsdell supra.
Further, whether the alleged harassment is perpetrated by co-workers (rather than supervisors), a plaintiff must demonstrate that he or she informed management in order for management to be liable. See Glimcher v. Boston Health and Swim Club, 14 MDLR 1033, 1045 (1991).
D.Count IV: Sexual Harassment
1. Procedural Bar
While LaFleur did raise a claim of sexual orientation harassment in her MCAD claim, she failed to raise sexual harassment. She is now barred from raising it at this point (see discussion under section B above.)
2. Substantive Bar
Even if LaFleur had brought a timely complaint for sexual harassment before the MCAD, her arguments recount incidents of transsexual harassment and not sexual harassment. While sexual harassment is a cognizable harm under c. 15IB, transsexual harassment is not a separate claim (nor is it covered under the aegis of sexual harassment).
In its decision in Macauley v. MCAD, 379 Mass. 279 (1979), our Supreme Judicial Court relied on three federal cases holding that transsexual discrimination is not within the scope of sexual discrimination law.[24] Moreover, as discussed above with regard to Count III, what LaFleur describes under Count IV is insufficiently severe or pervasive to amount to harassment under our law.[25] Further, where the alleged harassment was committed by co-workers LaFleur had an obligation to report it to management. (The record shows that when LaFleur did report complaints to management, Bird-Johnson responded promptly and thoroughly.)
Thus, LaFleur’s Count IV claim cannot proceed either procedurally or substantively. The defendant’s motion is allowed as to this count.
E. Count V: Wrongful Termination
In Count V LaFleur alleges wrongful termination based on the “public policy” exception to employee at-will doctrine. Specifically, LaFleur alleges Bird-Johnson fired her unlawfully because it violated public policy when it opened her mail-.
This argument is eliminated by the disposition of the defendant’s motion to dismiss Count I, which is based on the same incident. Because Bird-Johnson was justified in opening the letter, there can be no cognizable claim of wrongful termination based on these facts.[26] Indeed, LaFleur’s attempt to seek a remedy under this narrow exception suggests her inability to appreciate its highly specialized application.
F. Count VI: Civil Rights Violations
Where, as noted above, c. 15 IB is the exclusive remedy for employment-related civil rights violations, LaFleur’s claim under G.L.c. 12, §111 must fail. See Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 543 (1987). Even if LaFleur could proceed under c. 12, LaFleur fails to present evidence that Bird-Johnson’s actions involved the requisite “threats, intimidation or coercion” necessary to make out a G.L.c. 12, §111 claim.
G.Count VII: Breach of Employment Contract
LaFleur’s claim for breach of contract on the basis of the Bird-Johnson Employee Handbook is patently meritless.
First, the Handbook was not the basis of any negotiations between LaFleur and her employer, but was issued unilaterally by the defendant company fully two years after LaFleur began her job there. See Mullen v. Ludlow Hospital Society, 32 Mass.App.Ct. 968, 969 (1992). (Employment manual did not form the basis for a contract because the plaintiff did not negotiate its terms and received it only after he began working.) Second, LaFleur has admitted she does not know the *200 terms of the Handbook (LaFleur Affidavit to National Labor Relations Board, June 10, 1991). Third, and most significant, the Handbook plainly states, “(tjhis Handbook is not to be construed as creating an employment contract” and Bird-Johnson “reserve(s) the right to revise our policies and procedures.” (Exhibit B, LaFleur’s copy of Handbook.) Thus, the Handbook by its own terms declared it was not a contract and that Bird-Johnson could modify its terms unilaterally. The plaintiffs claim under Count VII is therefore dismissed.
ORDER
For the foregoing reasons, it is therefore ORDERED that the defendant Bird-Johnson’s motion be ALLOWED as to all counts.

Né Richard M. LaFleur. In March 1990 the plaintiff began to effect a female persona at the workplace, and in October 1990 legally changed names from Richard Marcel to Sandra Fay LaFleur. I shall employ female pronouns when referring to the plaintiff.

This motion is opposed.

An eighth count was brought against Paul Fahey (Director of Personnel) and “John Doe” for intentional interference with advantageous relations. LaFleur already has voluntarily dismissed the claim as to Fahey. With Fahey out of the suit, Count VIII stands only against an unascertained “John Doe.” No “John Doe” ever has been identified or served. The deadline for service, nowlongpast, was June 23,1993. For this reason, Count VIII also shall be deemed dismissed.

Level “B” is the entry-level machinist position at Bird-Johnson. Machinists of a higher grade are classified as Level “A.”

Plaintiff cut her wrists.

It is a disputed issue as to whether LaFleur is a transvestite or a transsexual.

On October 9, 1990 LaFleur petitioned the Middlesex Probate and Family Court, indicating a name change from Richard Marcel LaFleur to Sandra Fay LaFleur.

This office area was separated from the factory floors where LaFleur and her co-workers worked. The restroom was referred to as a “handicapped” bathroom because it was wheelchair-accessible. There was no female locker room area adjacent to the factory floor.

A club to which the plaintiff belonged.

The outer envelope was addressed to the plaintiff at Bird-Johnson’s company address. The inside envelope was addressed to LaFleur’s former post office box.

In its brief, Bird-Johnson notes that the U.S. government, when sending classified material, sends it to the company via Registered Mail, Certified Mail, Express Mail, or courier. One of Bird-Johnson’s procedures (described in the company’s Security Manual at Procedure No. 12, 3.3) requires the security officer to receive and open any mail sent to the company by one of the four above-mentioned methods. Since the U.S. government does not mark classified material as such (in order to avoid compromising security), the Bird-Johnson security officer must open each package to determine whether a package’s contents are classified. However, the officer’s review of the contents is limited to a determination of whether the material is classified. Where a package does not contain classified information, it is resealed and delivered to the addressee.

Buongiorno testified in her deposition that no other company official saw the letter and she did not discuss the letter’s contents with anyone. (Buongiorno Deposition, pages 14-18.)

Contrary to her initial allegations, LaFleur admitted at deposition that she did not know whether the security officer (Buongiorno) or anyone else at Bird-Johnson saw the letter. Even more importantly, LaFleur admitted that nobody discussed the letter with her or ever “confronted” her about it. LaFleur Deposition, pages III-28, III-90,11-28 and III-91.

The letter arrived on February 20, 1991; LaFleur was laid off in March 1991. LaFleur attempted suicide on January 29, 1990, and she began cross-dressing at work in March 1990.

LaFleur’s chapter 93, §103 claim must fail since c. 151B is recognized as providing “the comprehensive, exclusive scheme under Massachusetts law for redressing unlawful discrimination in employment.” Lqjoie v. General Electric Co., 1993 WL 343678, p. 8 (D.Mass. 1993). For this reason I will consider Counts II, III and IV only in light of the c. 15 IB claim.

LaFleur’s MCAD complaint does not contain the slightest hint of a claim for handicap discrimination. The law requires that, at the very least, there exist some reasonable relation between the MCAD complaint and the court complaint. Conroy, supra at 58.

The parties dispute as to whether LaFleur is a transvestite or a transsexual. While the court recognizes that transvestism (cross-dressing) differs from transsexualism, for the purposes of this litigation the legal analysis would be the same for either category. Neither transvestites nor transsexuals are legally recognized as suffering a “handicap” under c. 151B.

In discussing this required causal nexus, the defendant in its brief correctly notes that the doctrine of reasonable accommodation is not an independent legal requirement.

Bird-Johnson puts forth substantial evidence to establish that LaFleur’s termination was precipitated by a downturn in business (particularly defense contracts) which led its president to order a review of Bird-Johnson’s manufacturing operations. The manager of manufacturing engineering recommended the elimination of five out of nine machinists. Bird-Johnson needed to identify the most qualified and efficient of them. In the end, LaFleur was not one of the machinists retained. Peter Gwyn Affidavit.

According to her own testimony, LaFleur has not seen a medical professional specializing in gender identity disorders and has not had her alleged transsexualism medically verified. See LaFleur Deposition, 1-148.

 'The one decision plaintiff presents to support her argument for the recognition of such a “handicap” — an agency decision form the State of Florida Commission on Human Relations — is inapposite.

As noted above, LaFleur fails to state a claim under G.L.c. 93, §103.

There are only two incidents to which LaFleur points. LaFleur first testified that a co-worker, Scott Lowe, called LaFleur a “faggot” and said he’d kill LaFleur if she ever came near him. (LaFleur Deposition, pages III-101 to III-102). LaFleur also testified that she was told that a colleague had written graffiti on the men’s room wall suggesting that LaFleur and the male janitor were involved in an affair. LaFleur never saw the graffiti, which the janitor immediately removed. Id.

They are: Holloway v. Arthur Anderson & Co., 566 F.2d 659,661-63 (9th Cir. 1977); Voyles v. RalphK. Davies Medical Center, 403 F.Supp. 456, 457 (N.D. Cal. 1975), affd. mem. 570 F.2d 354 (9th Cir. 1978); and Powell v. Read’s Inc., 436 F.Supp. 369 (D.Md. 1977). The SJC notes in Macauley that “If the scope of the statute (c. 151B] is tobe extended, it must be done by legislation.” Macauley, 379 Mass. 279, 282 (1979).

LaFleur’s deposition testimony describes colleagues’ allegedly negative comments concerning her perfume, fingernails, and use of the bathroom.

The cause of action (public policy exception) through which LaFleur seeks a remedy is a limited exception to the doctrine of at-will employment. Under the Supreme Judicial Court’s decision in Flesner v. Technical Communications Corp., 410 Mass. 805, 810-11 (1992), the exception applies only where an employee is terminated for:
(1) asserting a legally guaranteed right: (2) doing what the law requires: (3) refusing to do that which the law forbids; or (4) performing important public deeds.
The facts of LaFleur’s case do not remotely approach a situation whereby any of these four exceptions would be invoked.