Tierney, J.
Both the plaintiff, Teamsters Union Local No. 59 (“Local No. 59”), and the defendants, Barnstable County (“the County”) and John F. DeMello, in his capacity as Barnstable County Sheriff (“the Sheriff’), seek summary judgment on all issues in this case.
BACKGROUND
The undisputed material facts are as follows: Local No. 59 is an independent affiliate of the International Brotherhood of Teamsters, and is the recognized collective bargaining unit for criminal investigators employed by the Barnstable County Sheriffs Department. The bargaining unit is comprised of Unit A and Unit B. Unit A consists of approximately fourteen technicians, radio technicians, dispatchers and radio operators. Unit B consists of seven criminal investigators and narcotics officers.
While the parties were negotiating the collective bargaining agreement of July 1, 1990 to June 30, 1992, which covers the wages, hours and conditions of employment for these employees, the Sheriff proposed a drug testing rule. This rule permits both random drug testing of employees and testing dúe to a reasonable suspicion of drug abuse. It only applies to those personnel who carry or might be asked to carry a firearm or might be called upon to interdict drugs. Presently, only the employees of Unit B fit that description and are affected by the rule. However, the Sheriff emphasizes that he could change the job descriptions of Unit A employees at any time, and that they could thus become eligible for random drug testing.
Part 13 of the drug testing rule states that all of its provisions are “. . . severable and if any of its provisions shall be held unconstitutional or otherwise invalid by any court of competent jurisdiction, the decision of the court shall not affect or impair any of the remaining provisions.” A similar provision is contained in Article XXVI of the agreement. Such severability clauses have been used in other agreements between the parties as a way of salvaging the majority of the contract should one section be found invalid.
Sometime during the summer of 1991, a majority of the members of the collective bargaining unit approved the collective bargaining agreement, including the drug testing rule. The votes of Unit A were commingled with the votes of Unit B for the purpose of approving this agreement.
On February 10, 1992, Deputy Sheriff Joseph Ambrosini (“Ambrosini”), a member of Local No. 59, was randomly selected by his superior for urinalysis drug testing and was ordered to submit to such testing. Local No. 59 claims that Ambrosini took the test under protest. The defendants affirm that Ambrosini submitted to the test, but deny that he did so under protest. Although this is a disputed issue of fact, it is *264 inconsequential for summary judgment purposes, because there is undisputed evidence that another officer, Deputy Sheriff Jeremiah L. O’Neill (“O’Neill”) took the test under protest the next day. The test results of Ambrosini’s urinalysis showed no evidence of drug use. On February 11, 1992, O’Neill, a member of Local No. 59, was also randomly selected by his superior for urinalysis drug testing and was ordered to submit to such testing. His test results showed no evidence of drug use.
Local No. 59 filed a grievance on behalf of the two Deputy Sheriffs. The Sheriff responded by suspending the random drug testing program. However, by a letter dated May 14, 1992, the Sheriff notified Local No. 59 that he intended to resume the random drug testing program unless Local No. 59 commenced an action to clarify the rights of its members. Local No. 59 commenced such an action, and the Sheriff has continued to refrain from implementing his testing policy. At no time have disciplinary proceedings involving drug use been brought against any members of the bargaining unit.
DISCUSSION
I. Standard of Review.
Summary judgment is appropriate when, as here, there are no disputed issues of material fact and the moving party is entitled to prevail as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso, supra. The only question here is which of the moving parties is entitled to prevail on the undisputed facts as a matter of law.
II. Mandatory Random Urinalysis Drug Testing Violates Article 14 of the Massachusetts Declaration of Rights.
In Guiney v. Police Commissioner of Boston, 411 Mass. 328 (1991), the Boston Police Commissioner promulgated a rule permitting random drug testing of police officers. Guiney, 411 Mass., at 330. The rule read that it was “. . . necessary to preserve the ‘integrity of the Department and its personnel; to guard against the harmful consequences to the public good occasioned by the unauthorized unlawful use of drugs by law enforcement personnel; and to maintain a high degree of public confidence in all those charged with upholding public order and public safety.’ " Id. The rule promulgated by the Sheriff in this case reads verbatim.
The Supreme Judicial Court struck down the rule in Guiney, stating that it constituted an unreasonable search and seizure under Article 14 of the Declaration of Rights. The Court based its decision on the fact that there was nothing in the record that showed that members of the Boston Police Department had a problem with illicit drug use, on or off duty. Furthermore, there was no public perception of such a problem. The Court set out the following standard for determining whether a mandated random drug testing policy complies with Article 14: “The reasonableness of a mandated urinalysis cannot fairly be supported by unsubstantiated possibilities. If the government is to meet the requirements of art. 14, it must show at least a concrete, substantial government interest that will be well served by imposing random urinalysis on unconsenting citizens . . . [T]he justification for body searches, if they ever can be done, cannot rest on some generalized sense that there is a drug problem in this country, in Boston, or in the Boston Police Department.” Guiney, 411 Mass, at 332-33.
The facts in this case are virtually identical to those in Guiney. There is no evidence that the members of Local No. 59 had any problems with on- or off-duty illicit drug use. The only evidence put in by the defendants pertains to suspected drug abuse by Barnstable County correctional officers and inmates. The defendants admit in their memorandum in support of their motion for summary judgment that, “the Plaintiff Unit B Union officers are not situated within the House of Corrections, and they are not correction officers.” Affiant Brad Parker, Deputy Master of the Barnstable House of Corrections, states that the criminal investigators are called upon to investigate criminal incidents, including those involving illegal drugs, that occur within the [House of Corrections]. They also enter the [House of Corrections] to access criminal records. Those officers do come in contact with inmates." The defendants argue that the fact that the criminal investigators sometimes investigate incidents at the House of Corrections gives rise to the need to randomly test them for drug use.
I disagree. The plaintiffs work in a building separate from the Barnstable House of Corrections and have very little contact with inmates. According to affiant William F. Murphy (“Murphy”), a criminal investigator, he has “been placed in charge of an investigation of an inmate situation only once” in four years of service. State Police generally investigate the criminal conduct of inmates, such as illicit drug use. Murphy states that the criminal investigators rarely pick up criminal records at the House of Corrections and have no inmate contactwhen they do so. Itwould seem that the Boston Police Officers, whose rights were upheld in Guiney, have more contact with the prisoners held in their holding cells than these criminal investigators have with House of Corrections inmates. I therefore find that random urinalysis drug testing of these criminal investigators constitutes an unreasonable search and seizure under Article 14 of the Massachusetts Declaration of Rights.
*265 III. The Members of Local No. 59 Did Not Consent to Random Urinalysis Drug Testing When They Ratified The Contract.
The contract was ratified by Local No. 59 pursuant to the commingled vote of Units A and B of the collective bargaining emit. Union members benefit from the increased bargaining power of such membership. Likewise, they sometimes must live with contract conditions which they, individually, might not have chosen. However, in an area of law which implicates privacy rights as much as drug testing of the human body, caution must be taken to protect those individuals whose rights might be voted away by the majority of their fellow Union members. Here, the majority of employees voting on the contract belonged to Unit A. Presently, only members of Unit B are subject to the drug testing policy.
The defendants urge reliance on two Massachusetts cases, O’Connor v. Police Commissioner of Boston, 408 Mass. 324(1990), and Gauthier v. Police Commissioner of Boston, 408 Mass. 335 (1990). In both of these cases, the Supreme Judicial Court upheld the Police Commissioner’s right to randomly test police cadets in training. These cases pre-date Guiney and are distinguishable from the present case in two respects.
First, the criminal investigators the defendants sought to test in this case are not cadets; they are past their probationary status. Indeed, Justice Greaney, in his dissent in O’Connor states, “In the case of permanent employees it could be argued that random drug testing is ‘unnecessary because proper supervision of employees plus [at least] the reasonable suspicion test should ordinarily suffice to turn up those who ought to be tested. But for beginning employees there has been no prior opportunity for such scrutiny . . ” O’Connor, 408 Mass, at 333, quoting LaFave, Search and Seizure (2d ed.) §10.3, 1990 supplement at 86. The sheriff has ample opportunity to supervise the criminal investigators and ascertain whether there is reason to believe that specific officers should be tested for drug use. A policy that requires a reasonable suspicion of illicit drug use would not trample on the privacy rights of the investigators to the extent of the present random search policy.
Second, the cadets in O’Connor and Gauthier individually signed consent forms which stated, “In consideration of my appointment as a police officer in the Boston Police Department, I agree and consent to submit to certain tests . . . when requested to do so for the purpose of determining whether I have unlawfully used . . . drugs. This agreement shall remain in full force and effect for the period of time during which I remain in a probationary status . . .” O’Connor, 408 Mass, at 333, fn. 1. The criminal investigators gave no such unqualified consent. First, they did not individually consent to the rule; the majority of the members of their bargaining unit ratified it as part of a contract. Second, the contract was subject to the severability clause discussed above. This clause on its face, and the evidence of discussion of the clause during contract negotiations, suggest that the contract was ratified in anticipation of a court challenge of this policy. It seems clear, from the evidence, that the criminal investigators would not have agreed to the drug testing rule if they thought they were giving the very unequivocal consent that would render their challenge to the rule forceless.
IV. Conclusion.
In conclusion, I rule that the members of Local No. 59 did not consent to the mandated random urinalysis drug testing. I further rule that the Sheriff and the County have not produced evidence of a government interest in randomly testing members of Local No. 59 for illegal drug use substantial enough to warrant interference with the union members’ rights under Article 14 of the Massachusetts Declaration of Rights.
ORDER
For the foregoing reasons, the plaintiffs motion for summary judgment is ALLOWED and the defendants’ motion for summary judgment is DENIED.
Accordingly, I DECLARE that the rights of the employees who have been affected by the drug testing policy have been abridged, in violation of Article 14 of the Massachusetts Declaration of Rights, and I ORDER the Defendants permanently to refrain from taking any actions to impose their drug testing rule upon the affected employee members of Local No. 59.